IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **JOSE FAVIO JEREZ MOLINA,** | ) | |
| | ) | |
| Petitioner, | ) | 8:09CV283 |
| | ) | |
| vs. | ) | |
| | ) | |
| **ERIC HOLDER, Attorney General,** | ) | **FINDINGS** |
| **JANET NAPOLITANO,** Secretary of | ) | |
| Homeland Security, **JOHN MORTON,** | ) | **AND** |
| Assistant Secretary for U.S. | ) | |
| Immigration and Customs Enforcement, | ) | **RECOMMENDATION** |
| **GREG JENSEN,** U.S. Immigration and | ) | |
| Customs Enforcement, and | ) | |
| **JEFF NEWTON,** | ) | |
| Director Douglas County Corrections, | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the court on Jose Favio Jerez Molina's Amended Petition for a Writ of Habeas Corpus, Pursuant to 28 U.S.C. § 2241, by a Person Subject to Indefinite Immigration Detention (Filing No. 16). The petitioner contests his continued detention, in excess of 180 days, after being found removable, since he has not yet been physically deported. Specifically, the petitioner argues the respondents are without authority to detain him and that, pursuant to either 8 U.S.C. § 1226(a) or 8 U.S.C. § 1231, the petitioner should be released on bond pending the outcome of his appeal of the removal order to the Eighth Circuit Court of Appeals.

**PROCEDURAL HISTORY**

On August 19, 2009, the petitioner filed a petition for writ of habeas corpus arguing he is subject to an unlawful indefinite detention. **See** Filing No. 1. On September 3, 2009, the respondents filed a brief (Filing No. 8) and an index of evidence (Filing Nos. 9 and 10) opposing the petition. On September 10, 2009, the court held a hearing pursuant to 28 U.S.C. § 2243. On September 19, 2009, a transcript (TR.) of the hearing was filed. **See** Filing No. 17. During the hearing, the court granted the petitioner's oral motion to amend

the petition, which he did on September 18, 2009.  **See** Filing No. 16.  The petitioner argues the appropriate remedy in this case is the court to order an immigration judge (IJ) to hold a bond hearing.  **See** *id.* at 4.  The respondents filed a brief (Filing No. 20) and an index of evidence (Filing No. 21) in response.  As part of the response, the respondents seek dismissal of the amended petition.

## FACTUAL BACKGROUND

The petitioner illegally entered the United States for the first time in 1985, but left voluntarily after a few months (TR. 19-20).  The petitioner illegally re-entered the United States on October 13, 1987, and was arrested by border officers (TR. 20).  On May 2, 1989, an IJ entered an order granting the petitioner voluntary departure by September 2, 1989, from the United States, in lieu of deportation.  **See** Filing No. 21 - Ex. 1(A) First Undated Jensen Decl. ¶ 7; **see also** Filing No. 9 - Ex. D IJ's Decision.  The petitioner left voluntarily in December 1990 (TR. 17).  The petitioner illegally returned to the United States in March 1991 (TR. 20).

The petitioner applied for political asylum and received a work permit from Immigration Services in 1991 or 1992, and has been working ever since (TR. 16-18).  **See also** Filing No. 9 - Exs. F, G, and Ex. EE; Filing No. 21 - Ex. 1(A) First Undated Jensen Decl. ¶¶ 10-11.  As part of his permit, the petitioner reported to Immigration Services on a monthly basis (TR. 16).  The petitioner worked at the same job for the last ten years (TR. 16).  The petitioner lived in Lexington, Nebraska, for the last fifteen years with a companion, and the petitioner's children and grandchildren (TR. 15).

On February 7, 1996, the U.S. Department of Justice issued a Warrant of Deportation for the petitioner, pursuant to INA § 241(a)(1)(B), and required him to appear.  **See** Filing No. 9 - Ex. H.  Information related to the warrant was sent to the petitioner at a California address, but was returned undelivered to the sender.  The petitioner did not appear.

On December 9, 2005, the petitioner was convicted on a misdemeanor charge of child abuse (TR. 16-17).  **See also** Filing No. 9 - Ex. N.  The misdemeanor conviction occurred in Dawson County, Nebraska.  The petitioner complied with the conditions of the

judgment, including probation (TR. 17).  The petitioner has no felony convictions in the United States.

On November 23, 2005, U.S. Citizenship and Immigration Services (CIS) sent the petitioner a letter regarding his asylum application and scheduling an interview for December 9, 2005.  **See** Filing No. 9 - Ex. M.  The petitioner did not appear for the interview.  Based on his failure to appear, the asylum application was denied on February 23, 2006.  **See** *id.* Ex. P Letter incorrectly dated Aug. 4, 2004.  On April 11, 2007, CIS found the petitioner ineligible for withholding removal, specifically for ABC benefits.  **See** Filing No. 9 - Ex. Q Letter.  However, the petitioner was released under supervision on April 12, 2007, and required to report monthly.  *Id.* Ex. T Supervision Order.  On April 16, 2008, the petitioner was interviewed related to his earlier asylum application, which he re-signed on that date.  **See** Filing No. 9 - Ex. F Asylum App.; Ex. W-1 Tr. of Interview.

On August 7, 2008, the petitioner, as a deportable alien, was taken into custody when he appeared for his monthly reporting to the Immigration and Customs Enforcement (ICE) office.  **See** Filing No. 9 - Ex. W-1.  On September 9, 2008, CIS issued a Notice of Intent to Deny the petitioner's request for asylum and withholding of removal from the United States.  **See** *id.* Ex. X.  On November 6, 2008, a final decision was issued denying the petitioner's request for asylum.  **See** *id.* Ex. Z.  On November 20, 2008, the Guatemalan Consulate issued a Temporary Travel Pass allowing CIS to transport the petitioner to Guatemala within sixty days.  **See** *id.* Ex. AA.  On December 3, 2008, the petitioner filed an application for stay of deportation arguing he was not subject to an outstanding deportation order and he was eligible for ABC benefits, Nicaraguan Adjustment and Central American Relief Act (NACARA) relief, and a hearing before an IJ.  **See** *id.* Ex. E Form I-246.  The application was denied the same day.  *Id.*

On December 4, 2008, the petitioner filed a petition for writ of habeas corpus and emergency motion for stay of deportation in the United States District Court for the District of Nebraska.  ***Jose Favio Molina Jerez v. Jeffrey Lynch, et al.,*** Case No. 8:08CV522.  Filing Nos. 1 and 2.  Later that day and after having a telephone conference with counsel for the parties, the undersigned magistrate judge entered an order provisionally granting the motion for stay pending a hearing before Senior District Court Judge Lyle E. Strom.

*Id.* Filing No. 3.  During the period of briefing for the district court case, but independently of it, on January 8, 2009, the petitioner was served with Form I-871, Notice of Intent/Decision to Reinstate Prior Order from the previous self deportation in December 1990.  **See, e.g.,** Filing No. 16 p. 23; Filing No. 21 - Ex. 1(E) Decision to Continue Detention.

On February 6, 2009, an IJ denied the petitioner's Motion for Bond Redetermination Hearing under 8 U.S.C. § 1226.  **See** Filing No. 21 - Ex. 1(B) Feb. 6, 2009, Order.  The IJ determined that he lacked jurisdiction to hear the bond request because the petitioner was in the custody of the U.S. Marshal.  *Id.*  The petitioner did not appeal the denial of bond request to the Board of Immigration Appeals (BIA).  **See** Filing No. 21 - Ex. 1 Third Undated Jensen Decl. ¶ 3.  Also on February 6, 2009, the petitioner filed a petition for review of the ICE Order before the United States Court of Appeals for the Eighth Circuit.

On February 24, 2009, Judge Strom entered an order stating the district court "case is stayed pending the decision of the United States Court of Appeals for the Eighth Circuit on the petitioner's appeal challenging the validity of his reinstatement order; all prior orders of this Court shall remain in effect."  ***Jose Favio Molina Jerez v. Jeffrey Lynch, et al.,*** Case No. 8:08CV522, Filing No. 37 - Mem. & Order p. 7 (D. Neb. Feb. 24, 2009).  Judge Strom also found the petitioner "does not pose a significant flight risk if released," but determined "inasmuch as the outcome of this case likely rests with the Court of Appeals, this Court defers the question of detention to that court's sound judgment."  *Id.*  On March 11, 2009, without discussion, the court of appeals denied the petitioner's motion for stay of removal.  ***Jose Favio Jerez Molina v. Eric H. Holder, Jr., et al.***, Case No. 09-1283 Order (8th Cir. Mar. 11, 2009).  The court of appeals case is now set for oral argument on November 18, 2009.

On March 9, 2009, ICE notified the petitioner that he was scheduled for a Post-Order Custody Review (POCR) and could submit any documentation prior to April 8, 2009.  **See** Filing No. 21 - Ex. 1(C) Notice to Alien of File Custody Review.  On the same day, ICE interviewed the petitioner.  **See** *id.* Ex. 1 Third Undated Jensen Decl. ¶ 5.  The petitioner submitted documents on March 26, 2009, in support of his request for release from

4

custody. **See** *id.* Ex. 1(D). On April 7, 2009, ICE issued a Decision to Continue Detention stating:

> You have made (3) illegal entries into the U.S. since March 15, 1985. You were an absconder with an order of deportation from an immigration judge for approximately (17) years. Based on your illegal entries into the U.S. and the length of time as an absconder it appears that you pose a flight risk.

*Id.* Ex. 1(E).

## ANALYSIS

The respondents' authority to detain the petitioner must stem from either 8 U.S.C. § 1226(a), which governs detention pending a decision on removal, or 8 U.S.C. § 1231, which governs detention after an alien is ordered removed. The parties dispute which statutory section applies to the petitioner's detention. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Accordingly, such "distinction has real consequences for the alien." *Id.* at 1059.

Under § 1231, after an alien is ordered removed, "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Such time period is defined as the "removal period." *Id.*

> The removal period begins on the latest of the following:
> (i)   The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).

The removal period is suspended where "the alien . . . acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2). However, an alien who is

not removed during the removal period may be subject to supervised release. *Id.* § 1231(a)(3). In contrast, an alien "may be detained beyond the removal period" if he "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* § 1231(a)(6). However, § 1231(a)(6) does not authorize the indefinite detention of removable aliens. *Zadvydas v. Davis*, 533 U.S. 678, 690, 699 (2001). Accordingly, absent special justification or an order of detention in a criminal proceeding, the "post-removal-period detention is limited to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689-90. Once a presumptively reasonable six-month period has elapsed, the alien bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The government may rebut such a showing. *Id.*

The Department of Homeland Security (DHS) promulgated regulations to provide an internal process for periodic custody reviews to determine whether there is a significant likelihood of removal in the reasonably foreseeable future. **See** 8 C.F.R. § 241.4; 65 Fed. Reg. 80,281, 80,294 (Dec. 21, 2000). Pursuant to these regulations, "[p]rior to the expiration of the removal period, the district director or Director of the Detention and Removal Field Office shall conduct a custody review for an alien . . . where the alien's removal, while proper, cannot be accomplished during the period, or is impracticable or contrary to the public interest." 8 C.F.R. § 241.4(k)(1)(i). The decision is based on the decision-maker's review of the alien's records and any information submitted on behalf of the alien. § 241.4(h)(1). The review may also include a personal or telephonic interview of the alien. *Id.* The alien detainee must be given "approximately 30 days" advance notice of the custody review. *Id.* The decision-maker must notify the alien, in writing, about the result of the POCR. § 241.4(k)(1)(i).

**A.    Pre-Decision Detention Under § 1226**

The petitioner contends § 1226 applies to his detention because this court's stay of deportation also stayed the 90-day removal period. The respondents deny § 1226 applies in this instance. Specifically, the respondents contend the removal period was unaffected

6

by this court's stay of removal, particularly where the Eighth Circuit Court of Appeals denied the petitioner's motion for stay of removal.  See Filing No. 20 p. 11-14.

Both parties rely on *Prieto-Romero*, where the court stated:

> The statute makes clear that when a *court of appeals* issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal.  See § 1231(a)(1)(B)(ii); **cf.** *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (explaining that "§ 1231(a)(1)(B)(ii) only applies to those cases in which [the court of appeals] also issued a stay of removal").  Because § 1231(a) authorizes detention only "*[d]uring* the removal period," § 1231(a)(2), and "*beyond* the removal period," § 1231(a)(6), it clearly does not provide any authority *before* the removal period.  Therefore, the plain language of § 1231(a) provides no authority to detain aliens such as Prieto-Romero whose removal order is administratively-but not judicially-final.

*Prieto-Romero v. Clark*, 534 F.3d 1053, 1059-60 (9th Cir. 2008) (alterations in original) (footnote omitted) (emphasis added); **see also** *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004).

The *Prieto-Romero* court further explained,

> For instance, when an alien files a petition for review of his removal order and we decline to grant a stay of removal, **see** § 1252(b)(3)(B), the removal period commences immediately, **see** § 1231(a)(1)(B)(ii), "[d]uring" which time the alien may be detained under § 1231(a)(2).  When the court of appeals has issued a stay, however, the alien may not be detained under any subsection of § 1231(a) unless and until the court finally denies the alien's petition for review.  **See** § 1231(a)(1)(B)(ii). FN6
>     FN6.  The beginning of the removal period is not delayed by every judicially entered stay, because the exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals.  **See** §§ 1231(a)(1)(B)(ii), 1252(a)(5).  Therefore, the entry of a stay of removal for any other reason-for example, a stay entered while a court reviews an alien's § 2241 habeas petition or petition for review of the BIA's denial of a motion to reopen-does not prevent the removal period from beginning.

*Id.* at 1060.

In this case, the district court entered an order staying removal for the purpose of reviewing the petitioner's December 4, 2008, § 2241 habeas petition. However, Judge Strom ordered the stay to continue in effect pending the court of appeal's judicial review of the petitioner's removal order. Even so, the district court's order staying deportation did not prevent the removal period from beginning. Similarly, the court of appeals activity did not prevent the removal period from beginning because the court of appeals denied a stay of deportation on March 11, 2009.[1] Accordingly, the petitioner's current detention cannot be governed by § 1226, which applies only to detention before the removal period begins.

### B.    Post-Decision Detention Under § 1231

The respondents argue the petitioner's detention is governed by § 1231(a) because the detention follows an administratively final order of removal. **See** Filing No. 20 p. 9-11. However, the respondents contend the ***Zadvydas*** analysis is inapplicable where, as here, there is a judicial stay in place. The petitioner contends there is no significant likelihood of removal in the reasonably foreseeable future because his court of appeals case is ongoing. **See** Filing No. 16 p. 2 ¶ 3. Additionally, the petitioner argues that his appeal will become moot if he is removed due to the statutory requirements of NACARA. ***Id.*** ¶ 4. Finally, the petitioner argues the respondents make inconsistent arguments by asserting the stay renders the ***Zadvydas*** analysis inapplicable at the same time that § 1226(a) does not apply. Otherwise, the petitioner does not contest that § 1231 applies. The respondents' arguments are internally consistent and consistent with statutory construction and the case law.

The petitioner's removal period began on March 11, 2009, when the court of appeals denied the petitioner's motion for stay of removal pending review of the reinstatement of the petitioner's order of removal. Prior to that time, the petitioner was served with notice of the reinstatement of the removal order on January 8, 2009.

---

[1] The beginning of the removal period may not begin until the date the court of appeals denies the motion to stay deportation, however such distinction between when the stay was denied and when the administrative order becomes final is not important for resolution of the parties' arguments here. **See** *Prieto-Romero*, 534 F.3d at 1059 n. 5.

Additionally, an IJ denied the petitioner's request for bond redetermination on February 6, 2009.  Further, the respondents assert they would have removed the petitioner based on the reinstated removal order absent the stay of removal entered in *Jose Favio Molina Jerez v. Jeffrey Lynch, et al.,* Case No. 8:08CV522.  The respondents argue the stay, initiated by the petitioner, constitutes an act by the petitioner to prevent his removal pursuant to 8 U.S.C. § 1231(a)(1)(C).  Such stay of removal, which did not stay the "removal period," as discussed more fully above, alleviates the necessity of a *Zadvydas* analysis because the respondents are unable to remove the petitioner, by the petitioner's own design, until the stay is lifted.  Based on the temporary inability to remove the petitioner, the respondents conducted a POCR, after sufficient notice to the petitioner, in accordance with § 1231 and internal procedures.  On April 7, 2009, ICE issued a decision to continue detention beyond the initial 90-day removal period under 8 U.S.C. § 1231(a)(6), based on a likelihood the petitioner would not comply with the removal order.

The petitioner argues the respondents lack special justification for his detention beyond the initial 90-day removal period because the petitioner is not an "absconder" as described in the April 7, 2009, decision to continue detention.  Specifically, the petitioner argues ICE has known the petitioner's whereabouts throughout his stay in California and Nebraska, particularly based on the petitioner's compliance with monthly reporting.  Further, the petitioner describes his employment and family history as support for his having strong ties to this community.  The petitioner contends the ongoing nature of the appeals process provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  **See** Filing No. 16 p. 2 ¶ 3 (**quoting** *Zadvydas v. Davis*, 533 U.S. 678, 690, 701 (2001)).

There are unusual circumstances in this case because the stay of deportation pre-dated the beginning of the removal period.  By the terms of the statute, the stay of deportation could not change the date of the beginning of the removal period.  **See** 8 U.S.C. § 1231(a)(1)(B).  However, because the petitioner initiated the stay of deportation, which prevents the respondents from effectuating deportation, the stay of deportation acts to suspend the removal period.  **See** *id.* § 1231(a)(1)(C).  Under these circumstances, "[t]he removal period shall be extended beyond a period of 90 days and the alien may

9

remain in detention during such extended period." *Id.* Accordingly, the continued detention of the petitioner is authorized under § 1231.

In the alternative, assuming the district court's stay of deportation does not constitute an act of the alien to prevent his removal under § 1231(a)(1)(C), then the removal period continued to run without suspension. Without suspension, the ninety-day period has run and the petitioner may be eligible for supervised release. **See** *id.* § 1231(a)(3). However, the petitioner cannot succeed on his petition unless he bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 690. The petitioner has failed to meet his burden. Although the time period for removal or for resolution of the court of appeals case is uncertain, such facts do not favor the petitioner because these facts are not without an "obvious termination point." *Id.* at 697 (determining removal indefinite or potentially permanent where no country would accept deportees). "Judicial review . . . is subject to strict procedural rules. That independent, external constraint is 'satisfactor[y] assur[ance],' [the] petition for review will be resolved with reasonable expedition." *Prieto-Romero*, 534 F.3d at 1064-65 (footnote and internal citations omitted); **see also** *Jama v. Ashcroft*, 362 F.3d 1117, 1117 (8th Cir. 2004). Therefore, pursuant to the Eighth Circuit's precedent, awaiting an appeal's resolution is insufficient justification to meet the petitioner's burden to show "there is no significant likelihood of removal in the reasonably foreseeable future."

Assuming *arguendo*, the petitioner has met his burden of proof under *Zadvydas*, evidence suggests the respondents provided the petitioner with sufficient due process by affording him a POCR. Furthermore, the POCR resulted in a finding that the petitioner apparently poses a flight risk based on the number of his illegal entries into the United States and failure to abide by a previous order of deportation. The respondents deny the court has jurisdiction to review ICE's discretionary decision to continue detention after the petitioner received a POCR. **See** Filing No. 20 p. 18-20. In fact, the petitioner does not request this court review the discretionary decision. **See** Filing No. 16 at 4, 7 ("The appropriate remedy would be for this court to order an immigration judge to hold a bond hearing.").

10

For the several and independent reasons stated above, the petitioner's four grounds for relief should be denied.

**C. Motion to Dismiss**

The respondents argue the petitioner fails to state a claim for which relief may be granted because the petitioner has failed to show his detention is either impermissible or indefinite. As discussed more fully above, the court finds a determination made on the merits of the petitioner's claims more appropriate than resolution based the standards related to a motion to dismiss. Further, the respondents seek an order modifying the December 4, 2008, order staying removal entered in *Jose Favio Molina Jerez v. Jeffrey Lynch, et al.,* Case No. 8:08CV522. This court will not determine the merits of any modification of an order in a related, yet unconsolidated matter. For these reasons, the respondents' motion to dismiss should be denied. Upon consideration,

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

1. Jose Favio Jerez Molina's Amended Petition for a Writ of Habeas Corpus, Pursuant to 28 U.S.C. § 2241, by a Person Subject to Indefinite Immigration Detention (Filing No. 16) be denied.

2. The respondents' motion to dismiss (Filing No. 20) be denied.

**ADMONITION**

Pursuant to NECivR 72.3 any objection to these Findings and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of these Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 9th day of November, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge